UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

RASHAD WAREH,                                    16-cv-06210(JGK)

                    Plaintiff,              MEMORANDUM OPINION AND
                                            ORDER
        - against-

DAVID S. LESPERANCE,

                    Defendant.

————————————————————————

JOHN G. KOELTL, District Judge:

     This is a dispute between the two general partners to the
Starnberg Investment Group ("Starnberg"), a general partnership
with an unusual business purpose: helping foreign nationals
obtain Polish citizenship by investing in an insolvent Polish
distillery, which would purportedly facilitate the grant of
Polish citizenship pursuant to a citizenship fast track program
created by the office of the Polish President. The scheme failed
and no client has received citizenship. The general partners ---
Rashad Wareh, the plaintiff, and David S. Lesperance, the
defendant --- agree that they should wind down Starnberg, and
have agreed in principle to sell Starnberg's assets to a third-
party investment firm, Impression Invest, S.A. ("Impression").
However, the parties disagree on the post-sale destination of
the proceeds, which, pursuant to the sale contract with
Impression, is currently slated to be a Cypriot deposit account

under the defendant's control. The plaintiff claims that the defendant will abscond with the proceeds and otherwise cheat him unless there is judicial intervention.

Pending before the Court is the plaintiff's application for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to enjoin the defendant, absent the plaintiff's consent, from: (i) opening the deposit account that would serve as the post-sale destination of the proceeds pursuant to the sale contract with Impression; (ii) disbursing the proceeds of the sale; and (iii) taking any other actions on behalf of Starnberg.[1]

The plaintiff is a citizen of New York. The defendant is a citizen of Canada currently residing in Poland. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

On August 4, 2016, the plaintiff sought a temporary restraining order ("TRO"), along with the preliminary injunction, seeking the same relief described above. On August 9, 2016, the Court held a hearing on the request for a TRO and denied the request, concluding that the plaintiff had not made

---

[1] The Complaint also asserts claims against the defendant seeking (i) a declaratory judgment clarifying the parties' rights under the Starnberg partnership agreement; (ii) specific performance ordering the defendant to take no unilateral actions adverse to the plaintiff in connection with Starnberg; (iii) an accounting of Starnberg assets; and (iv) damages for breach of contract and fiduciary duties. These claims are not presently before the Court.

the requisite showing of immediate and irreparable harm or of a likelihood of success on the merits. See Dkt. 14. On September 26, 2016, the Court heard oral argument on the plaintiff's motion for a preliminary injunction. The request for a preliminary injunction is **denied.**

I.

The following facts are based on the parties' submissions in connection with the TRO and the preliminary injunction.

The defendant is a Canadian lawyer licensed to practice in the province of Ontario who specializes in assisting high net worth foreign clients obtain citizenship in other countries. Lesperance Decl. ¶ 1. The plaintiff is a New York lawyer admitted to practice in New York, Virginia, and Washington, DC. Wareh Decl. ¶ 1.

In October 2012, an individual represented by the plaintiff asked the plaintiff to contact the defendant to help obtain Polish citizenship. Wareh Decl. ¶ 2. The plaintiff had other clients with a similar interest. Wareh Decl. ¶ 5. The defendant already represented a group of individuals who also desired Polish citizenship. Wareh Decl. ¶ 5. To advance the interests of their respective clients, in May 2013, the defendant and the plaintiff decided to form a general partnership, Starnberg. Wareh Decl. ¶ 11; Lesperance Decl. ¶ 9; see also Wareh Decl., Ex. 3 (Starnberg Partnership Agreement) ¶ 2.

Starnberg is headquartered in Ontario, Canada, and its internal affairs are governed by a partnership agreement, which includes an Ontario choice-of-law provision. Wareh Decl., Ex. 3 ¶¶ 1, 9. The agreement grants the defendant and the plaintiff mutual power of attorney rights --- the scope of which is disputed --- to act on behalf of Starnberg. Wareh Decl., Ex. 3 ¶ 5; see also Wareh Decl. ¶¶ 13-14; Wareh Supp. Decl. ¶¶ 3-4; Lesperance Decl. ¶¶ 11, 31. The agreement states that the defendant has "the primary responsibility for monitoring . . . loans" and for providing the plaintiff with partnership status reports and loan information. Wareh Decl., Ex. 3 ¶ 4. The parties agree that client confidentiality is of paramount importance because their clients could be subject to reprisals in their home countries if it became public that their clients were seeking foreign citizenship. Wareh. Supp. Decl., Ex. 29; Lesperance Decl. ¶¶ 1, 5.

The scheme the parties devised was as follows. The defendant negotiated a "fast-track citizenship for investment" program with the office of the Polish President (at the time, former President Bronisław Komorowski) pursuant to which foreign applicants for Polish citizenship would gain preferential treatment in exchange for lending money to a struggling Polish business. Wareh Decl. ¶ 4; Lesperance Decl. ¶ 2; see also Wareh Decl., Ex. 2 (e-mail from defendant describing scheme and

stating that no official documentation of the program exists).
Pursuant to individual retainer agreements with the defendant's
law firm and investment agreements with Starnberg, each of the
Starnberg clients originally represented by the plaintiff loaned
on average around $625,000 to Starnberg, with their loans
secured by Starnberg's assets.[2] Wareh Decl. ¶¶ 7, 15; Lesperance
Decl. ¶ 6; Wareh Decl., Ex. 1 (Client Retainer Agreement); Wareh
Decl., Ex. 4 (Individual Investment Agreement with Starnberg).
Starnberg loaned the funds to Szczecińska Fabryka Wódek sp. z o.
o. ("Starka"), a special purpose vehicle owned and controlled by
the defendant's wife, a Polish citizen.[3] Wareh Decl. ¶ 10;
Lesperance Decl. ¶ 3; Wareh Decl., Ex. 5 (Loan Agreement Between
Starnberg and Starka). Starka in turn was to use the loans to
acquire and operate SWW Polmos ("Polmos"), an insolvent
distillery in Poland. Wareh Decl. ¶¶ 4, 10, 17; Lesperance Decl.
¶¶ 12-13.

The parties intended that the Starnberg client loans would
be repaid through operating profits or asset sales. Wareh Decl.
¶ 15; Lesperance Decl. ¶ 12. The defendant would receive a

---

[2] It is unclear how much, if anything, the Starnberg clients
originally represented by the defendant have loaned to
Starnberg.
[3] Starka was originally named Agora PPUH sp. zo. o. Wareh Decl. ¶
10. For convenience, the entity is referred to only as Starka in
this Memorandum Opinion and Order. In 2014, the ownership
interest in Starka was transferred to Yasmia Ltd., a Cypriot
entity also controlled by the defendant's wife. Wareh Decl. ¶
18; Lesperance Decl. ¶ 16.

success fee from each of Starnberg's clients upon the grant of
citizenship. Wareh Decl. ¶ 7; Wareh Decl., Ex. 1 at 2. The
plaintiff received legal fees as part of his continued
representation of his clients. Wareh Decl. ¶ 6.

Starka acquired Polmos, but Polmos never began commercial
operations. Wareh Decl. ¶ 17; Lesperance Decl. ¶ 17. Since 2013,
the parties have been attempting to sell Starka in order to
recoup client loans. Lesperance Decl. ¶ 15. In May 2015, former
President Bronisław Komorowski lost his reelection bid to the
current President of Poland, Andrzej Duda. Lesperance Decl. ¶
14. The defendant did not believe that President Duda, based on
President Duda's party platform, would continue the citizenship
for investment program. Lesperance Decl. ¶ 14. The parties
accordingly redoubled their efforts to wind down Starnberg in
order to repay the loans. Wareh Decl. ¶ 27; Lesperance Decl. ¶
15; Lesperance Decl., Ex. A. In September 2015, the defendant
moved to Poland to oversee efforts to sell Starka. Lesperance
Decl. ¶ 21.

At this point, the relationship between the plaintiff and
the defendant rapidly deteriorated. Communication between the
two became more infrequent and the plaintiff began to suspect
that the defendant would misappropriate partnership assets.
Wareh Decl. ¶¶ 26-28; see also Wareh Supp. Decl., Ex. 25.

In November 2015, the plaintiff, on behalf of Starnberg and without informing the defendant, retained Polish counsel to file enforcement actions in Polish court against Starka to recoup client loans. Wareh Decl. ¶ 27; Wareh Supp. Decl. ¶ 18; Wareh Supp. Decl., Ex. 21 (Feb. 19, 2016 Polish Court's Decision); Lesperance Decl. ¶¶ 22-23, 26-28. The enforcement actions garnered the attention of the Polish prosecutor's office, which initiated a criminal investigation into Starka. Wareh Supp. Decl. ¶ 15; Wareh Supp. Decl., Ex. 22 (The Polish Prosecutor's Procedural Pleading). On January 8, 2016, upon learning about the enforcement actions and without informing the plaintiff, the defendant represented to the Polish court that he had power of attorney over Starnberg and attempted to withdraw the enforcement proceedings. Wareh Decl. ¶ 28; Wareh. Supp. Decl. ¶ 13; Wareh. Supp. Decl., Ex. 20 (Lesperance's Motion to Withdraw). The plaintiff demurred and told the defendant that he thought that the defendant was misconstruing the power of attorney, demanded that the defendant stop acting unilaterally, and threatened legal action. Wareh Decl. ¶¶ 22-25, 28; Wareh Supp. Decl., Ex. 25. Likewise, the plaintiff noted that several clients had threatened legal action against the plaintiff himself to recover their loans. Wareh Supp. Decl., Ex. 25.

Also around that time, the plaintiff discovered that the defendant had assigned to a bank a security interest in

Starnberg assets superior to that of Starnberg's clients. Wareh
Decl. ¶ 25; Lesperance Decl. ¶¶ 17-19. The plaintiff was
incensed that he had not been consulted previously about that
decision, which he viewed as yet another instance of the
defendant disregarding his obligations under the Starnberg
partnership agreement. Wareh Decl. ¶ 25.

In early 2016, after several unsuccessful rounds of
negotiations with potential buyers --- including one in which
Wareh sent a letter to Impression (an investment firm interested
in purchasing Starka) accusing Lesperance of misrepresenting
facts to Impression, see Wareh Supp. Decl. ¶ 20; Lesperance
Decl., Ex. E[4] --- the parties discussed taking formal steps to
improve their fraying relationship. See Wareh Decl. ¶¶ 29-30. To
reassure the plaintiff, a lawyer for the plaintiff, Katherine
Toomey, was appointed as a director to the board of Starka.
Wareh Decl. ¶ 31; Wareh Decl., Ex. 7. The defendant told the
plaintiff that he would amend Starka's organizational documents
so that the defendant could not unilaterally remove Ms. Toomey
from Starka's board, but the defendant never actually amended
Starka's organizational documents. Wareh Decl. ¶ 31. The parties
also discussed amending the Starnberg partnership agreement,

---

[4] The documents somewhat confusingly refer to Impression as
"Polmos." See, e.g., Lesperance Decl., Exs. E, I. However, in
their declarations and papers, the parties agree that the letter
was sent to Impression.

including revising the power of attorney provision that had caused the plaintiff so much consternation, but did not ultimately amend the agreement. Wareh Decl. ¶ 30; see also Wareh Decl., Ex. 8.

In addition, the plaintiff asked to review documents and records evidencing the identities of the Starnberg clients originally represented by the defendant, the size of their loans to Starnberg, and the disposition of all loans to Starnberg generally. Wareh Decl. ¶ 32. Despite the plaintiff's protests, the defendant refused to disclose the identities of his clients and their loan sizes on the ground that that information is purportedly subject to the attorney-client privilege. Wareh Decl. ¶ 34; Wareh. Supp. Decl., Exs. 30-31. As far as the disposition of loans to Starnberg, the defendant provided only summary information, not original bank documents or transaction information. Wareh Decl. ¶¶ 35-38. But, based on that summary information, the plaintiff noted certain troubling inconsistencies, including that approximately $2.25 million in Starnberg loans to Starka were unaccounted for, and that approximately $7 million were reflected on Starka's books as shareholder loans from the defendant's wife rather than as loans from Starnberg. Wareh Decl. ¶¶ 35-38. The plaintiff did not view the defendant's explanations for the discrepancies as acceptable. Wareh Decl. ¶¶ 35-39.

Nevertheless, by June 2016, the parties had become optimistic that they would be able to sell Starka to Impression. On June 3, 2016, the plaintiff, his legal team, and the defendant's legal team met in Poland to resolve their differences. Wareh Decl. ¶ 40. The parties agreed that the defendant would provide the plaintiff with additional financial documentation related to Starnberg's transactions with Starka, that all meetings with Impression would include the representatives of both the defendant and the plaintiff, and that the Starnberg partnership agreement would be revised. Wareh Decl. ¶ 40; Wareh Decl., Exs. 9-10. Also on June 3, 2016, the parties orally agreed with Impression to the basic terms of a sale agreement. Wareh Decl. ¶ 40; Wareh Supp. Decl. ¶ 24; Lesperance Decl. ¶ 46.

However, the defendant failed to deliver to the plaintiff the promised financial information and the parties did not amend the partnership agreement. Wareh Decl. ¶ 43; Wareh Decl., Ex. 14; Lesperance Decl. ¶ 47; Lesperance Decl., Ex. F. The defendant thereafter refused to respond to several of the plaintiff's communications. Wareh Decl. ¶ 44. As a result, on June 28, 2016, Ms. Toomey returned to Poland to exercise her rights as a director of Starka and to access Starka's bank records herself. Wareh Decl. ¶ 44. After meeting with one of Starka's banks, Ms. Toomey was immediately removed from the

board of Starka by the defendant and his wife to prevent Ms.
Toomey from accessing additional Starka records. Wareh Decl. ¶¶
31, 44; Wareh Decl., Ex. 12; Lesperance Decl. ¶ 49. The short-
lived rapprochement between the parties was over.

On July 5, 2016, the defendant unilaterally agreed with
Impression on the final terms of the Starka sale contract. Wareh
Decl. ¶¶ 49-50; Wareh Decl., Ex. 18 (Starka Sale Contract with
Impression); Lesperance Decl. ¶¶ 48-50. The sale contract
required the defendant to designate a Cypriot bank account for
the deposit of the sale proceeds by August 31, 2015, a deadline
subsequently moved to September 30, 2016 in light of attempts
between the parties to settle this dispute. Wareh Decl. ¶ 51;
Lesperance Decl. ¶ 53. Under the terms of the sale contract, the
funds are to be disbursed in installments, with the first
payment of approximately $500,000 due on October 15, 2016. Wareh
Decl. ¶ 51; Wareh Decl., Ex. 18 at 18. The last payment,
approximately $10 million, is due on July 15, 2018. Wareh Decl.,
Ex. 18 at 18. The sale contract contemplates total payments of
approximately $19 million, which Lesperance swears will be more
than sufficient to repay all of Starnberg's clients in full,
plus interest. Lesperance Decl. ¶ 52. Lesperance represents that
he will distribute funds to repay the client loans, a promise
the plaintiff does not trust. Wareh Decl. ¶¶ 52-55, 57, 59. As a
compromise, the defendant has proposed that the sale proceeds be

held in escrow in a Cypriot account managed by two attorneys admitted to practice in New York, an offer the plaintiff has thus far rejected as insufficient to protect his clients' interests. Wareh Decl. ¶ 53; Wareh Supp. Decl. ¶ 27; Lesperance Decl. ¶¶ 53, 55.

## II.

The standards that govern the issuance of a preliminary injunction are well established. Ordinarily, a party seeking a preliminary injunction must show: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).

"To satisfy the irreparable harm requirement, [the plaintiff] must demonstrate that absent a preliminary injunction [he] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999)). "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.

Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Id. (citation and alteration omitted); see also Emirates Int'l Inv. Co. v. ECP Mena Growth Fund, LLC, No. 11-cv-9227 (JGK), 2012 WL 2198436, at *6 (S.D.N.Y. June 15, 2012).

The burden is on the plaintiff to establish his entitlement to a preliminary injunction. See Emirates Int'l Inv. Co., 2012 WL 2198436, at *6.

The plaintiff has not come close to establishing that he will suffer irreparable injury absent a preliminary injunction. The plaintiff's primary concern is that the defendant will fail to distribute proceeds from the Starka sale to Starnberg's clients, which could potentially subject the plaintiff, as a general partner of Starnberg, to legal action from Starnberg's clients. The fear is speculative and derivative of hypothetical injuries to Starnberg and, through Starnberg, Starnberg's clients. The plaintiff is suing in his individual capacity, and neither Starnberg nor its clients are parties to this lawsuit. Accordingly, the defendant's disbursement of the sale proceeds, even if adverse to Starnberg and its clients, would not immediately and actually harm the plaintiff. And although Starnberg's clients have apparently been threatening legal action against the plaintiff since at least January 2016, see

13

Wareh Supp. Decl., Ex. 25, the plaintiff does not claim that any have actually initiated any legal proceedings. Indeed, as the plaintiff concedes, given that Starnberg's clients place such importance on secrecy and confidentiality, they are unlikely to initiate public proceedings against the plaintiff.

In addition, any potential harm is clearly speculative because there is virtually no imminent risk that the defendant will disappear with the Starka sale proceeds. The sale contract calls for payments not in one lump sum, but in eight scheduled installments over a period of two years, with the first payment of approximately $500,000 due on October 15, 2016, and the last payment of approximately $10 million due on July 15, 2018. The defendant's intentions regarding the reimbursement of Starnburg's clients should become clear during that time period. Accordingly, the plaintiff will have ample time to litigate this dispute while also assessing the defendant's concrete conduct with respect to Starnberg's clients.

Moreover, any liability that the plaintiff could face would certainly be addressable by money damages. But "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990); see also In re AutoHop Litig., No. 12-cv-4155 (LTS), 2013 WL 5477495, at *10 (S.D.N.Y.

Oct. 1, 2013) ("Injunctive relief based on a breach of contract is the exception and not the rule." (citation and internal quotation marks omitted)). If the plaintiff fears that the defendant's actions might frustrate an anticipated money judgment, his remedies lie in any enforcement mechanisms allowed under the Federal Rules of Civil Procedure and the laws of foreign states (such as Poland, Canada, and Cyprus), not a preliminary injunction.[5] See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) (citing Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 330-31, (1999)); see also S.E.C. v. Cavanagh, 445 F.3d 105, 118 n.27 (2d Cir. 2006) (discussing the broad pre-judgment remedies available under Canadian law).

---

[5] The plaintiff argues that injunctive relief is warranted because the defendant, through his allegedly fraudulent course of conduct, has demonstrated that he is likely to conceal the proceeds along with his own assets to render himself judgment proof. The cases the plaintiff relies on are distinguishable. Each case involved the substantial risk of the defendant evading an actual money judgement, as opposed to a hypothetical one, or other extreme circumstances not present here. See, e.g., Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 87 (2d Cir. 1996) (money judgment); Republic of Philippines v. Marcos, 806 F.2d 344, 353 (2d Cir. 1986) (foreign government's executive order asking United States to freeze former dictator's assets). In any event, there has been no showing in this case that the defendant, a Canadian lawyer with a practice in Ontario, would be unable to satisfy a potential money judgment. See Chateau Hip, Inc. v. Gilhuly, No. 95-cv-10320 (JGK), 1996 WL 437929, at *2 (S.D.N.Y. Aug. 2, 1996).

The plaintiff attempts to side-step the plain fact that any injury would be redressable through money damages by arguing that he will suffer an irreparable harm to his reputation because the plaintiff will become known as a lawyer who cannot protect his clients' interests. However, the risk to the plaintiff's reputation is entirely speculative and depends on the same hypothetical contingencies that doom his claim in the first place. There has thus far been no failure to disburse any of the Starka sale proceeds to the Starnberg clients. The plaintiff will be well-aware of any failure to disburse the proceeds because the plaintiff is in possession of the sale contract with Impression and knows the schedule of prospective payments. Moreover, the plaintiff has hired a law firm ostensibly to protect his clients' interests and may prosecute the litigation successfully, attenuating the risk that his reputation would be damaged.

The plaintiff also suggests that he will be unable to fulfill his fiduciary duties to his clients if the defendant misappropriates the funds. This argument is also speculative. There is no showing that the defendant will misappropriate any Starka sale proceeds. In any event, the plaintiff has been upholding his fiduciary duties to his clients by pursuing this lawsuit, and engaging another law firm to protect the Starnberg clients' interests in Starka.

Furthermore, the plaintiff's delay in bringing the preliminary injunction motion counsels against a finding of irreparable injury. "[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (citation and internal quotation marks omitted); see also Brockmeyer v. Hearst Corp., No. 01-cv-7746 (JGK), 2002 WL 1402320, at *4 (S.D.N.Y. June 27, 2002).

The plaintiff argues that he acted promptly because he filed suit one month after the defendant agreed to the sale contract with Impression. The plaintiff frames the issue far too narrowly. In this action, the plaintiff asserts that the defendant will misappropriate partnership assets and seeks clarification of his rights under the Starnberg partnership agreement because the defendant has been allegedly misinterpreting that agreement to the plaintiff's detriment. These are the same complaints that the plaintiff has had since at least November 2015 when he instituted ex parte enforcement proceedings against Starka in Poland. In fact, the plaintiff soon after told the defendant directly about his concerns, demanding that any proceeds from any sale of Starka flow into an account designated by the plaintiff. See Wareh Supp. Decl., Ex. 25. Accordingly, the plaintiff was alarmed about the issues at

17

the heart of this lawsuit for at least ten months before he filed this suit, which cuts against a finding of irreparable injury. See, e.g., Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No. 15-cv-4244 (JGK), 2016 WL 4742317, at *4 (S.D.N.Y. Sept. 12, 2016) (pursuit of alternative judicial remedies did not justify delay in seeking preliminary injunction); Life Techs. Corp. v. AB Sciex Pte. Ltd., No. 11-cv-325 (RJH), 2011 WL 1419612, at *7 (S.D.N.Y. Apr. 11, 2011) ("Courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." (citation and alteration omitted)); Hessel v. Christie's Inc., 399 F. Supp. 2d 506, 521 (S.D.N.Y. 2005) (two-month delay in filing suit).

Finally, the plaintiff has failed to demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the equities tip decidedly in his favor. Though neither party raised the issue in their papers on the preliminary injunction, it is unclear that the plaintiff has Article III standing to pursue his claims going forward. See

Grand Manor Health Related Facility, Inc. v. Hamilton Equities
Inc., 941 F. Supp. 2d 406, 415 (S.D.N.Y. 2013) ("[T]he Court has
an independent obligation to assure itself that it has [] 
subject matter jurisdiction"); see also Fed. R. Civ. P.
12(h)(3). To satisfy the requirements of Article III standing, a
plaintiff must show that (1) he has suffered an actual or
imminent injury in fact, which is concrete and particularized;
(2) there is a causal connection between the injury and
defendant's actions; and (3) it is likely that a favorable
decision in the case will redress the injury. Lujan v. Defs. of
Wildlife, 504 U.S. 555, 560-61 (1992).

The plaintiff, in his individual capacity, has sued the
defendant, also in his individual capacity. But the plaintiff's
purported claims may arise out of an injury to Starnberg, which
is not a party to this lawsuit.[6] Cf. Shea v. Hambro Am. Inc., 606
N.Y.S.2d 198, 199 (App. Div. 1994) (In New York, "it is settled
that a partnership cause of action belongs only to the
partnership itself or to the partners jointly, and that an
individual member of the partnership may only sue and recover on
a partnership obligation on the partnership's behalf"); Goodwin
v. MAC Res. Inc., 540 N.Y.S.2d 477, 478 (App. Div. 1989) ("[A]s
a general rule [in New York], partners cannot sue each other at

---

[6] The standing issue is complicated by the agreement between the
parties that foreign law --- specifically, Ontario partnership
law --- governs this dispute.

law for acts relating to the partnership unless there is an accounting, prior settlement, or adjustment of the partnership affairs."). The plaintiff's claims may be subject to similar standing problems to the extent that they seek to rectify injuries to Starnberg's third-party clients, who are not parties to this suit. See e.g., Compl. ¶ 48 (stating that, if the defendant disburses Starka sale proceeds to the Cypriot account, it "would leave [the plaintiff] and his *client-investors* with no adequate remedy at law to obtain repayment of their loans" (emphasis added)); Pl.'s Op. Br. at 14 (describing imminent risk of injury to clients).

It is unnecessary to reach the standing question now "[b]ecause the motion for a preliminary injunction lacks merit and should be denied."[7] Emirates Int'l Inv. Co., 2012 WL 2198436, at *6; see also APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) ("A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.").

---

[7] Relatedly, the defendant suggests in "abbreviated format" in his papers that this action should be dismissed on *forum non conviens* grounds, see Def.'s Op. Br. at 10-11, a point the plaintiff vigorously contests, see Pl.'s Reply Br. at 7-8. The defendant has moved to dismiss the action on *forum non conviens* grounds in a separate motion pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. See Dkt. 21. It is unnecessary to reach that issue, which is not fully briefed.

**CONCLUSION**

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the parties' arguments are either moot or without merit. The plaintiff's motion for a preliminary injunction is **denied**.

**SO ORDERED.**

**Dated:    New York, New York
           September 29, 2016**

                                    _____/s/_____
                                           **John G. Koeltl**
                                    **United States District Judge**

21